UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL FLETCHER,<br><br>    Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br>a Delaware Corporation,<br><br>    Defendant. | Civil No.<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

# COMPLAINT

Michael Fletcher, the Plaintiff, by his attorney, Lou Jungbauer, states as follows:

## THE PARTIES

1. Michael Fletcher ("Fletcher") is a 51- year old locomotive engineer, who at all material times has lived in the County of Lincoln, the city of Maxwell, in the State of Nebraska;

2. Fletcher began his railroad career with Union Pacific Railroad Company ("UPRR") in 1990, working as a switchman/conductor; he received his license as a locomotive engineer in 1992; he has worked in that capacity since then;

3. Union Pacific Railroad Company is the Defendant; UPRR was and is at all material times an interstate railroad, engaged in interstate commerce, hauling freight throughout much of the United States; including in and through the state of Nebraska, and the city of Omaha; UPRR maintains its headquarters in Omaha;

## JURISDICTION

4. Fletcher brings this action pursuant to the Federal Employers' Liability Act, (FELA) Title 45 U.S.C., Sections 51-60; the Federal Safety Appliance Act (FSAA), Title 45 U.S.C. Sections 1-23; and the Federal Locomotive Inspection Act (LIA), 49 U.S.C. Sections 20102 and 20701;

## STATEMENT OF CLAIMS

5. Fletcher suffered injuries to his spine and related parts of his body, and aggravations to his neck and back on at least two occasions; for the purposes of this Complaint, each Count refers to a distinct date and occurrence;

## FIRST INCIDENT: February 5, 2017

6. On or about February 5, 2017, Fletcher was employed by UPRR as a locomotive engineer;

7. Fletcher, while working in the scope and course of his employment, was required to operate train symbol GBW2JR-03, consisting of three locomotive engines and 100 loaded freight cars, from North Platte to Cheyenne;

8. His conductor was Wes Easter;

9. Prior to departure, after boarding locomotive UP 5590, Fletcher was required to perform an inspection of the locomotive cab, as per Federal Railroad Administration and Union Pacific Railroad rules and regulations; among his duties he was required to inspect the engineer's seat, to make certain it complied with the aforesaid regulations; specifically, as to the seat, the rules require it to be stable and secure;

10. When Fletcher examined the seat, he immediately noticed the cover of the seat cushion had been torn, the tear or rip had apparently been taped back together; in

addition, the seat itself was wobbly and unstable; Fletcher knew such seats could move from side to side, frontward and backward, as the train headed down the rails;

11. Fletcher, who had been inspecting and riding on locomotive engine cab seats on a regular basis for more than twenty years, recognized this unstable, unsecure seat would make it difficult, if not impossible, for him to focus and perform his duties in a safe and efficient manner; equally important, sitting on such a seat, as the train traveled down the tracks, put him in a position of danger of injury to his spine;

12. Fletcher notified a supervisor by radio; Tim Bullock, a UPRR manager, who came out to the that portion of the Bailey railyard to try and resolve the problem;

13. Bullock climbed up into the engine cab; neither Fletcher nor Easter had ever met Bullock before, so Fletcher reached out and shook Bullock's hand, introduced himself to Bullock, and explained the situation;

14. Bullock, like most managers on this Railroad at that time, was under pressure from his superiors to get this train out of town; Bullock looked at the seat, concluded it was "okay", and stated that the crew must depart immediately;

15. Fletcher, however, understanding what riding on a defective seat can do to one's spine, asked Bullock to either have an engine mechanic come out from the Yard shop building and exchange the noncomplying seat with the unoccupied middle seat, or, in the alternative, permit Fletcher and Easter to make a simple move in the Yard, in effect switching the lead engine with one of the two additional engines already part of the train;

16. Bullock denied the request, and told the crew if they did not take the train "as is", they would be charged with insubordination; Fletcher, who had been involved in a similar situation fifteen months earlier, understood that comment to mean he would be forced to undergo an investigation conducted by UPRR managers, after which the railroad superintendent would pass judgment, with the result he would be fired;

17. Fletcher and Easter reluctantly complied with Bullock's order, and the crew took the train to Cheyenne;

18. On the trip to Cheyenne, the Fletcher's engine seat bounced, jerked and otherwise moved as a result of the seat being unsecure, causing pain and discomfort in his back; in addition, the tape on the cushion portion of the seat made it difficult for him to sit comfortably, he again experiencing discomfort and pain in his spine;

19. When they arrived in Cheyenne, Fletcher called his supervisor, to discuss what Fletcher should do if his physical condition didn't improve—he realized in the normal course of activity, he would be scheduled to operate a different locomotive and train the following day, heading back to North Platte;

20. Fletcher told the manager he did not need to see a doctor there in Cheyenne, but instead figured if he could rest and get some sleep, he could hopefully return home on his scheduled train, then making an appointment with his local doctor's office to get in as soon as possible;

21. Fletcher did so, and made an appointment to see APRN Mary Dailey, a health care practitioner who had experience examining and treating railroad workers as well as performing routine physicals for railroaders; Dailey administered a steroid injection

and directed Fletcher to take prescription medication, and stay off work, and attend physical therapy;

## STATUTORY VIOLATIONS

**A. Federal Employers' Liability Act / Negligence**

22. Fletcher submits that the locomotive engine seat he was ordered to ride on February 5, 2017, was unsafe and not secure, constituting negligence on the part of UPRR, as a result, in whole or in part by:

    a. UPRR's failure to provide Fletcher with a reasonably safe place to work;

    b. UPRR's failure to properly inspect and maintain the engineer seat on locomotive UP 5590;

    c. UPRR failure to follow its own safety rules, in denying Fletcher's requests to have the defective seat replaced;

23. That as a result, in whole or in part, of the negligence set forth in the preceding paragraph, Fletcher suffered injuries to his neck, back and other parts of his body; has lost wages and suffered a loss of benefits, and will continue to suffer a loss or diminution of earning capacity and benefits in the future, in an amount to be proven at trial;

24. That as a further result, in whole or in part, of the UPRR's negligence as set forth above, Fletcher has had to undergo medical, chiropractic and related health care treatment in attempts to alleviate his condition, spending money and time attending medical and chiropractic appointments, undergoing numerous injections, shots, tests, in an amount that will be proven at trial;

25. That as a further result, in whole in part, of the UPRR's negligence as set forth above, Fletcher is expected to require additional medical and related treatment and care, including back surgery;

26. That as a further result, in whole or in part, of UPRR's negligence as set forth above, Fletcher has in the past and will in the future suffer physical and emotional pain;

**WHEREFORE**, Fletcher requests a jury trial of this matter, and asks this Court to enter judgment in his favor, and against UPRR, in an amount he will prove at trial;

    **B. The Locomotive Inspection Act**

27. Fletcher restates and incorporates paragraphs 1 through and including 21 above;

28. Fletcher submits UPRR violated the Locomotive Inspection Act (LIA), in operating a locomotive engine with a defective engineer's seat; in violation of the aforesaid statutes and regulations;

29. Fletcher submits the UPRR violated the LIA, in using an unsafe and unsecure engine seat on locomotive UP 5590;

30. Fletcher submits the UPRR's violations of the LIA caused, in whole or in part, injury to his back, neck and spine, and other parts of his body;

31. As a further result, in whole or in part, of UPRR's violation of the LIA, Fletcher was required to seek medical and chiropractic treatment and care; he will also be required to undergo further medical, chiropractic, and related treatments in the future, at a cost to be proven at trial;

32. As a further result, in whole or in part, of UPRR's violation of the LIA, Fletcher has lost wages and benefits, in amounts to be proven at trial; he will continue to suffer a

loss or diminution in his earning capacity, and benefits referenced above, in an amount to be proven at trial;

33. As a further result, in whole or in part, of UPRR's violation of the LIA, Fletcher has lost and will continue to suffer a loss in his enjoyment of life; as well as continue to suffer physical pain, for the remainder of his life;

**WHEREFORE**, Fletcher requests this Court enter judgment his favor, and against UPRR, in an amount to be proven at trial.

**Fletcher requests a jury trial in this matter.**

### C. Applicable Code of Federal Regulations ("CFR") Rules and Regulations

Title 49, Subtitle B, Section 229, Chapter II, Part 229

Subparts 229.7, 229.13, 229.21, 229.23, 229.45, and 229.119

34. Fletcher restates and incorporates paragraphs 1 through and including 21 from Count I, Part A, above;

35. In addition to having violated the FELA and FLIA, Fletcher submits UPRR violated specific CFR rules and regulations referenced above, in operating locomotive engine UP 5590, with an engine seat that did not meet the standards set forth;

36. Fletcher further submits UPRR violated the aforesaid subparts by its failure to require a thorough inspection of the locomotive seat prior to the February 5, 2017 incident;

37. As a result, in whole in part, of UPRR's violation of the subparts of the Code of Federal Regulations, set forth above, Fletcher has in the past and will in the future suffer:

    a. injury to his body, requiring medical and chiropractic treatment,

  b. physical and emotional pain,

  c. loss of wages and benefits in the past,

  d. loss or diminution of earning capacity in the future,

  e. loss of benefits in the future,

  f. loss of enjoyment of life,

**WHEREFORE**, Fletcher asks this Court enter judgment in his favor and against UPRR in an amount to be proven at trial, plus whatever other compensation the Court deems just.

**Fletcher requests a jury trial in this matter.**

### SECOND INCIDENT: APRIL 17, 2017

38. Fletcher restates and incorporates paragraphs 1 – 17 of Count I of this Complaint;

39. On or about April 17, 2017, Fletcher was engaged in the scope and course of his duties as a locomotive engineer for UPRR, was required to bring a freight train from Cheyenne, Wyoming to North Platte, Nebraska;

40. As the train approached North Platte on Main Line 4, the train optimizer system shut down, causing the distributive power to go into isolation mode, triggering a severe run-out.

41. Fletcher, seated in the engineer's chair, was jostled about in a whip-lash manner; he was thrown forward, then backward, resulting in new and aggravating injuries to his spine, neck, back and other parts of his body;

42. Fletcher was able to return home, where he called his manager, indicating what occurred; Fletcher stated he would make an appointment with his doctor who would

assess the situation; the manager agreed to the course of action, asking Fletcher to contact the Railroad after his doctor appointment;

43. Fletcher followed those instructions, and once again his medical care provider instructed him to remain off work to receive treatment for his injuries;

## STATUTORY VIOLATIONS

### A. FELA / Negligence

44. Fletcher submits UPRR negligently violated the FELA on April 17, 2017, causing, in whole or in part, aggravating injuries and new damage to his neck, back and spine, by its failure to:

   a. Provide him with a reasonably safe place to work;

   b. Inspect and/or maintain the braking systems on its engines and freight cars Fletcher was bringing from Cheyenne to North Platte;

   c. Inspect and maintain the components of the engine and train's braking systems, and/or trip optimizer;

45. That as result, in whole or in part, of UPRR's negligence as set forth in the previous paragraph, Fletcher has and will continue to:

   a. Suffer physical and emotional pain, requiring past and future medical and chiropractic treatment and care; as well as the financial bills for said care, in amounts to be proven at trial;

   b. Loss of past wages and benefits, as well as a loss or diminution of his earning capacity in the future, in amounts to be proven at trial;

   c. Loss of enjoyment of life in the past and future.

**WHEREFORE**, Fletcher asks this Court to enter judgment in his favor and against UPRR in an amount to be proven at trial, plus any other relief this Court deems just. Fletcher requests a jury trial in this matter.

### B.  Locomotive Inspection Act / Safety Appliance Act (FSAA)

46. Fletcher submits as a result of UPRR's violations, in whole or in part, of the LIA and the Federal Safety Appliance Act (Title 45, United States Code, Sections 16-23), as set forth in paragraphs 37 and 38 above, he has in the past and will in the future suffer damages as set forth in paragraph 42 (a, b, and c) above.

**WHEREFORE**, Fletcher asks this Court to enter judgment in his favor and against UPRR in an amount to be proven at trial, plus any other relief this Court deems just. Fletcher requests a jury trial in this matter.

### THIRD INCIDENT: OCTOBER 12, 2017

47. Fletcher restates and incorporates paragraphs 1 – 17 of Count I of this complaint;

48. On or about October 12, 2017, Fletcher was engaged in the scope and course of his employment with UPRR, operating locomotive engine UP 7433, bringing train ZPDG2-10 to North Platte;

49. As the head end of the train approached Sutherland, Nebraska, at Milepost NX 305.75, the engine ran over a soft spot in the rails, and the cab and seat he was in suddenly jerked him sideways, causing Fletcher to be thrown about in the seat;

50. Fletcher felt immediate pain in his neck, low back, into his buttocks, and down his leg into his foot;

51. He was able to complete the trip; upon arriving home, he made an appointment with APRN Mary Dailey, who administered a Toradol injection, and prescribed Fletcher to undergo a series of MRI studies;

52. Fletcher was restricted from working as a result of the incident.

## STATUTORY VIOLATIONS

### A. FELA / Negligence

53. Fletcher submits UPRR violated the FELA in the following manner:

    a. Negligently failing to provide him with a reasonably safe place to work;

    b. Negligently failing to inspect and maintain locomotive UP 7433, including its suspension system, engineer's seat, and other components of the engine;

    c. Negligently failing to inspect and maintain the track, rail, and switch components at MP 305.75, causing or contributing UP 7433 to bounce, resulting in the engine making a sudden jerking motion;

    d. Negligently failing to issue a slow order for trains passing by that particular Milepost until the issue had been resolved;

    e. Other negligence to be proven at trial;

54. UPRR's negligence, as set forth in the preceding paragraph, caused, in whole or in part, injury and damage to Fletcher, including, but not limited to:

    a. Physical pain and emotional injury;

    b. An aggravation of or causing new injuries to Fletcher's neck, back, legs and feet, requiring him to undergo medical and chiropractic treatment and care, at a cost to be proven at trial;

   c. A loss of wages and benefits in the past;

   d. A loss or diminution of earning capacity and benefits in the future;

   e. A loss of enjoyment of life;

   f. The need for future medical and chiropractic care, in amounts to be proven at trial;

**WHEREFORE**, Fletcher requests the Court enter judgment in his favor, and against UPRR, in an amount to be proven at trial.

**Fletcher requests a jury trial in this matter.**

   B. **Federal Locomotive Inspection Act, and Code of Federal Regulation violations**

55. Fletcher submits UPRR violated the Locomotive Inspection Act and applicable Regulations by operating locomotive engine UP 7433 when it did not comply with either statute, causing in whole or in part, the engine to "dip", the cab undergoing a sudden, violent jerking motion inside the engine cab, tossing Fletcher about while in his seat;

56. That as a result, in whole or in part, of the sudden movement of the engine cab and seat, Fletcher suffered an aggravation of / and new injuries to his neck, back, spine, legs and feet, among other injuries;

57. That as a result, in whole or in part, of UPRR's violation of the FLIA, and the applicable Code of Federal regulation, Fletcher has in the past and will in the future suffer:

   a. Physical and emotional pain;

    b. Injuries requiring him to undergo medical and chiropractic treatment and care, in amounts to be proven at trial;

    c. Past loss of wages and benefits, and a loss or diminution in the future of earning capacity and benefits;

    d. Loss of enjoyment of life;

**WHEREFORE**, Fletcher requests this Court enter judgment in his favor, and against UPRR, in an amount to be proven at trial.

**Fletcher requests a trial by jury.**


**Lou Jungbauer**
Law Office of Lou Jungbauer
(651)780-6072
jungbauerlou@gmail.com